**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JERRY W. HARVEY, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
| vs. | )   CASE NO. 15-CV-192-FHM |
| | ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
|     DEFENDANT. | ) |

## OPINION AND ORDER

Plaintiff, Jerry W. Harvey, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th

---

[1] Plaintiff Jerry W. Harvey's application was denied initially and upon reconsideration. At the request of the Commissioner the case was remanded in June 2014. A supplemental hearing was held before an Administrative Law Judge (ALJ) Lantz McClain on December 10, 2014. By decision dated January 14, 2015, the ALJ entered the findings which are the subject of this appeal. The Appeals Council did not assume jurisdiction over the case. The ALJ's decision represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.984.

Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 35 years old on the alleged disability onset date and 41 on the date of the denial decision. Plaintiff has a high school education and past work experience as a certified nurse assistant. Plaintiff claims to have become disabled as of June 1, 2009 due to bipolar, depression, anxiety, and high cholesterol. [R. 133].

## The ALJ's Decision

The ALJ found that Plaintiff has severe impairments relating to cyclothymia and agoraphobia with panic attacks. [R. 434]. The ALJ determined that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but is limited to simple, repetitive tasks, can relate to supervisors and co-workers on a superficial work basis only, and is unable to work with the general public. [R. 436-37].

Although Plaintiff is unable to perform his past relevant work, based on the testimony of the vocational expert, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. [R. 30]. Accordingly, the ALJ determined that Plaintiff was not disabled. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts that the ALJ: 1) failed to properly consider the medical source opinions; and 2) failed to perform a proper credibility determination.

## Analysis

### Medical Source Opinions

Plaintiff argues that the ALJ failed to properly consider the medical source opinions, specifically the opinions of Plaintiff's treating physicians, Dr. Peteryne Johnson-Miller, M.D., and Dr. W. John Mallgren, D.O.; Plaintiff's counselor, Mr. Robert Blasdell; psychiatric consultative examiner, Dr. William L. Cooper, Ph.D.; and the state agency physicians.

<u>Peteryne Johnson-Miller, M.D.</u>

Dr. Peteryne Johnson-Miller treated Plaintiff from November 17, 2010 through September 9, 2013. On March 13, 2012, she filled out a *Medical Opinion Re: Basic Unskilled Work Requirements* and *Medical Opinion Re: Absences from Work.* [R. 716-717]. Dr. Johnson-Miller opined that in a routine work setting, Plaintiff could not respond appropriately to supervision; respond appropriately to coworkers; deal with changes; maintain concentration and attention for extended periods; handle normal work stress; and

could not be expected to attend any employment on a sustained basis. Dr. Johnson-Miller also concluded that because of Plaintiff's severe depression, panic attacks, mood instability, and agoraphobic avoidance, he would miss three or more days of work per month.

The ALJ made the following findings pertaining to Dr. Johnson-Miller's opinion:

> While the undersigned has carefully considered Dr. Johnson-Miller's opinion, it cannot be given controlling weight because it is in conflict and inconsistent with Dr. Johnson-Miller's own treatment records and other substantial evidence. Therefore, the undersigned accords Dr. Johnson-Miller's opinion little weight. The claimant received the majority of his medication management via registered nurse practitioners, none of which opined about the claimant's abilities. Dr. Johnson-Miller's limited medication records show the claimant was consistently pleasant and friendly. His hygiene and grooming was good. Depression was noted, but he readily agreed to medication changes when appropriate. Despite his numerous subjective complaints in pursuit of disability, medication management appointments occurred monthly or less often. Inpatient treatment was precipitated by medication non-compliance or lack of medication.

[R. 441-42].

Plaintiff argues that as a treating physician, Dr. Johnson-Miller's opinion should have been given greater weight. [Dkt. 16, pp. 5-6]. A treating physician's opinion is accorded controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. However, if the opinion is deficient in either of these respects, it is not given controlling weight. When an ALJ decides to disregard a medical report by a claimant's physician, he must set forth specific, legitimate reasons for his decision. An ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due

to his or her own credibility judgments, speculation or lay opinion." *Watkins v. Barnhart,* 350 F.3d, 1297, 2003 WL 22855009 (10th Cir. 2003).

Plaintiff contends that the ALJ incorrectly stated Dr. Johnson-Miller's records reflected Plaintiff was consistently "friendly and pleasant." Before completing the medical source statement in March 2012, Dr. Johnson-Miller saw Plaintiff on five occasions: November 17, 2010; March 23, 2011; July 13, 2011; November 7, 2011; and February 27, 2012. Although at times Plaintiff's mood was depressed and his affect was sad, treatment notes indicate Plaintiff was found to be cooperative, pleasant, friendly, had good eye contact, and good grooming and hygiene. [R. 271, 263, 400, 402, 404]. Although the ALJ's statements were not a literal recitation of Dr. Johnson-Miller's records, his interpretation is reasonable.

Plaintiff argues that the ALJ accorded little weight to Dr. Johnson-Miller's opinion, in part, because nurse practitioners were involved with managing Plaintiff's medication. The ALJ did not reject Dr. Johnson-Miller's opinion because Plaintiff was treated by nurse practitioners. In considering the treatment provided by Dr. Johnson-Miller, the ALJ noted that the majority of Plaintiff's medication management was provided by registered nurse practitioners, and that Dr. Johnson-Miller's records were limited. [R. 441]. The ALJ noted that despite Plaintiff's numerous subjective complaints, medication appointments occurred monthly or less frequently and inpatient treatment was precipitated by medication non-compliance or lack of medication. [R. 441-42]. Plaintiff argues that by making this observation the ALJ is trying to set the standard for Plaintiff's treatment. There is no merit to this contention. The ALJ noted the frequency of Plaintiff's appointments in the context

of summarizing the record evidence and made a reasonable observation based on the record.

Plaintiff is dissatisfied with the weight given to the opinion of Dr. Johnson-Miller by the ALJ and is essentially asking the court to reweigh the evidence. However, the court will not reweigh the evidence or substitute its judgment for that of the Commissioner. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005); *White v. Barnhart*, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). The court finds that the ALJ gave good reasons for the weight accorded to Dr. Johnson-Miller and his decision is supported by substantial evidence.

### Mr. Robert Blasdell

Plaintiff argues that the ALJ did not properly consider the opinion of Plaintiff's primary therapist, Mr. Robert Blasdell. On September 2, 2014, Mr. Blasdell completed a *Medical Source Opinion of Ability To Do Work-Related Activities (Mental)*, which was also signed by clinic director, Dr. John Mallgren, D.O. In the opinion, percentages are marked indicating the amount of time Plaintiff would not be able to perform various types of work. The opinion contains a diagnosis of panic disorder with agoraphobia and cyclothymia and states, "Medicine should help symptoms & may be a voc rehab candidat [sic]." [R. 763-64]. The ALJ thoroughly discussed this opinion and accorded it little to no weight because beyond Plaintiff's diagnosis, there was no explanation of the percentages and how they translate into work-related functional limitations. [R. 442-43].

Plaintiff contends that the ALJ did not recognize the extent of Mr. Blasdell's participation in Plaintiff's care. The ALJ accurately noted that from November 6, 2013 through July 23, 2014, Mr. Blasdell saw Plaintiff on one occasion, April 1, 2014. On that date Plaintiff was found to be well groomed, oriented to person, place, and date, thought

6

process was linear, and attention span was good. No follow-up appointment was scheduled. [R. 443, 754].

Plaintiff argues that if the opinion of Mr. Blasdell lacked sufficient support, the ALJ had a duty to seek further development of the record before rejecting it. Without any discussion of the case, Plaintiff quoted *Robinson v. Barnhart,* 36 F3d 1079, 1084 (10th Cir. 2004) to support the assertion that the ALJ had the duty to recontact Mr. Blasdell. [Dkt. 16, p. 7]. In *Robinson* the court relied on a former version of 20 C.F.R. §§ 404.1512(e)(1), and 416.912(e)(1) which at the time required an ALJ to recontact a treating physician in certain circumstances. However, those sections have been amended and revised and no longer contain that requirement. The applicable regulations about recontacting a physician, 20 C.F.R. § 404.1520b(c) and 20 C.F.R. § 416.920b(c), provide:

> (c) If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (c)(1) through (c)(4) of this section. We might not take all of the actions listed below. We will consider any additional evidence we receive together with the evidence we already have.
>
>> (1) We may recontact your treating physician, psychologist, or other medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return;

>   (2) We may request additional existing records (see § 404.1512);
>
>   (3) We may ask you to undergo a consultative examination at our expense (see §§ 404.1517 through 404.1519t); or
>
>   (4) We may ask you or others for more information.
>
>   (d) When there are inconsistencies in the evidence that we cannot resolve or when, despite efforts to obtain additional evidence, the evidence is insufficient to determine whether you are disabled, we will make a determination or decision based on the evidence we have.

20 C.F.R. § 404.1520b. The ALJ had no obligation in this case to contact Mr. Blasdell for further information. The court finds no error in the ALJ's treatment of Mr. Blasdell's opinion.

### John Mallgren, D.O.

Plaintiff argues the ALJ improperly rejected the opinion of John Mallgren, D.O. conveyed in a mental status form dated October 15, 2013 and the medical source statement dated September 2, 2014 which was also signed by Mr. Blasdell. [R. 714, 763-64]. On the mental status form, Dr. Mallgren opined that Plaintiff decompensated markedly under increased stress, had poor problem solving skills, would respond poorly to work pressure, supervision, and coworkers. Plaintiff could remember, comprehend, and carry out simple tasks and intermittent complex tasks and recommended continued outpatient treatment. The ALJ noted that Dr. Mallgren was the medical director at the mental health facility where Plaintiff received treatment and there was no evidence of a treating relationship. Plaintiff recognizes Dr. Mallgren is not a treating physician. [Dkt. 16, p. 8]. The ALJ accorded little weight to the opinion of Dr. Mallgren because evidence revealed Plaintiff "decompensated" and required inpatient treatment only when he lacked prescribed

mediation due to either non-compliance or illness. [R. 442]. Plaintiff contends, however, that Dr. Mallgren's signature on the medical source statement gave direct support to Mr. Blasdell's opinion. The court has already determined that the ALJ's rejection of Mr. Blasdell's opinion was proper. Dr. Mallgren's signature in support of Mr. Blasdell's opinion does not change the court's determination. The court finds that the ALJ properly evaluated Dr. Mallgren's opinion.

## William Cooper, Ph.D.

Plaintiff argues that the opinion of consultative examiner, William Cooper, Ph.D., is entitled to deference. [Dkt. 16, p. 8]. On September 9, 2014, Dr. Cooper noted Plaintiff's chief psychiatric complaint is depression and anxiety attacks.

Dr. Cooper opined:

> The present assessment found him to be of average intelligence, with adequate verbal abstracting ability, immediate and recent memory, reading ability, and calculating skills. He performed somewhat less well on a test of fund of information, probably due to less than optimal academic effort. His performance on tests of attention, concentration, and pace of mental activity was also more limited, likely due to adverse effects of anxiety and depression. He appears able to understand simple questions and follow simple directions. There were no signs of psychosis. He appears anxious in social settings and likely has limited ability to tolerate normal stress. He is able to avoid obvious hazards in his environment. He appears able to manage his own funds. His insight appears limited. His prognosis appears adequate with continued treatment.

[R. 722-23].

The ALJ accorded "some but not great weight to Dr. Cooper's findings as the basis of his opinion was the claimants subjective complaints during a one-time assessment." [R. 442]. The ALJ stated the medical evidence clearly reveals the Plaintiff has the ability to

maintain on an outpatient basis with limited treatment when he is compliant with his medication. Further, Plaintiff has the ability to attend church and the library, and has the ability to maintain relationships. *Id.*

The court finds that the ALJ appropriately considered the basis of Dr. Cooper's opinion and that the opinion is not supported by other evidence in the record.

### Disability Determination Services (DDS)

On January 11, 2011, Dr. Phillip Massad, Ph.D., prepared a Mental Residual Functional Capacity Assessment concluding Plaintiff could perform simple, repetitive tasks with routine supervision, can relate to supervisors and peers on a superficial work basis, could not relate to the general public, and could adapt to a work situation. [R. 257-59]. Dr. Massad's opinion was affirmed by Dr. Edith King, Ph.D. [R. 272]. The DDS psychologists reviewed Plaintiff's medical records and rendered their opinions based on that review. The ALJ stated that he gave some weight to the assessments by the DDS consultants. The ALJ found that although the assessments are from 2011, treatment records through June 2014 support the DDS findings. The ALJ noted that despite Plaintiff's subjective complaints, he has been maintained on a limited outpatient basis when medication compliant. Further, Plaintiff has been able to maintain relationships with his grandparents who provide housing and financial support, attend church, go to the library, watch movies and play games with friends.

The court finds that the ALJ provided appropriate reasons supported by the record for the weight he gave the DDS opinions.

**Credibility**

Plaintiff argues that the ALJ's decision should be reversed because he failed to properly evaluate his credibility. "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005)(citation, brackets, and internal quotation marks omitted).

In determining that Plaintiff's testimony was not credible, the ALJ articulated his reasons for his credibility finding including: dichotomy between Plaintiff's inability to obtain employment because of his felony conviction; expressed concerns about finances and desire for his own place which may have been an indication of secondary gain for his disability application; although he desired to become a chef, his attorney told him he could not work while seeking disability; and inpatient admissions were precipitated by lack of medication, including non-compliance. [R. 437-38]. The court finds that the ALJ properly linked his credibility finding to the record and that the credibility finding is supported by substantial evidence. Therefore, the court finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

## **Conclusion**

The court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The court further finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 26th day of April, 2016.

_Frank H. McCarthy_
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE